UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America,

    Plaintiff,

    v.                                              Civil Action No. 2:12-CV-72

Jane C. Sullivan,

    Defendant.

## OPINION AND ORDER
(Doc. 9)

The Plaintiff United States of America ("the government") commenced this action against Defendant Jane C. Sullivan, a resident of Stamford, Vermont, pursuant to § 7401 of the Internal Revenue Code, 26 U.S.C. § 7401, to reduce to a money judgment five years' worth of unpaid federal income taxes, penalties, and interest. (Doc. 1.) Presently before the Court is the government's Motion for Summary Judgment (Doc. 9), to which Sullivan has not filed a response. A hearing on the Motion, at which both parties appeared, was held on February 20, 2013.

For the reasons that follow, the Court hereby GRANTS the government's Motion.

## Factual and Procedural Background

This case arises from the alleged underpayment by Sullivan of her personal income taxes for the years 1996 to 1999, and 2010. Because Sullivan failed to respond to the government's Motion for Summary Judgment after receiving the notice due *pro se* litigants

(Doc. 9-1), the facts in the government's record are deemed undisputed (except insofar as Sullivan's Answer expresses disagreement).

According to a declaration from Rai Shepardson, a Technical Services Advisor for the Internal Revenue Service ("IRS"), as well as official IRS records,[1] the following assessments were made by a delegate of the Secretary of the Treasury of the United States on the following dates:

Taxable Year 1996:

March 29, 1999 – Income Tax Assessed: $65,577.00. (Doc. 9-3 at 2.)

March 29, 1999 – Estimated Tax Penalty: $2,322.00. (Doc. 9-3 at 2.)

December 26, 2005 – Failure to Pay Tax Penalty: $7,609.16. (Doc. 9-3 at 2.)

Taxable Year 1997:

March 15, 1999 – Income Tax Assessed: $67,080.00. (Doc. 9-4 at 2.)

March 15, 1999 – Interest Assessed: $5,703.42. (Doc. 9-4 at 2.)

December 22, 2008 – Failure to Pay Tax Penalty: $12,303.01. (Doc. 9-4 at 7.)

Taxable Year 1998:

April 10, 2000 – Income Tax Assessed: $27,355.00. (Doc. 9-5 at 2.)

April 10, 2000 – Estimated Tax Penalty: $1,059.00. (Doc. 9-5 at 2.)

April 10, 2000 – Interest Assessed: $2,373.62. (Doc. 9-5 at 2.)

December 22, 2008 – Failure to Pay Tax Penalty: $4,459.30. (Doc. 9-5 at 5.)

---

[1] The official records provided by the government include IRS Forms 4340 for each of the years at issue, all submitted under both seal and signature of an IRS Accounting Operations Manager.

Taxable Year 1999:

>   November 13, 2000 – Income Tax Assessed: $15,795.00.  (Doc. 9-6 at 2.)
>
>   November 13, 2000 – Estimated Tax Penalty: $483.00.  (Doc. 9-6 at 2.)
>
>   November 13, 2000 – Interest Assessed: $554.66.  (Doc. 9-6 at 2.)
>
>   December 22, 2008 – Failure to Pay Tax Penalty: $2,228.69.  (Doc. 9-6 at 5.)

Taxable Year 2010:

>   June 6, 2011 – Income Tax Assessed: $21,513.00.  (Doc. 9-7 at 2.)
>
>   June 6, 2011 – Estimated Tax Penalty: $374.00.  (Doc. 9-7 at 2.)
>
>   June 6, 2011 – Failure to Pay Tax Penalty: $188.68.  (Doc. 9-7 at 2.)
>
>   June 6, 2011 – Interest Assessed: $107.82.  (Doc. 9-7 at 2.)

Accordingly, the assessments for the combined tax years equals $237,086.36.  In her Answer, Sullivan stated that she "strenuously disagree[s]" that she owes anything and sought relief "due to extenuating and mitigating circumstances."  (Doc. 4.)  During the hearing on the instant Motion, however, Sullivan repeatedly stated that she did not dispute the amounts of these assessments and agreed that they have not been paid.[2]

Incorporating statutory additions and interest, the total amount owed as of September 21, 2012, according to Shepardson's declaration, is $417,757.97.  (Doc. 9-2 at 2.)

Between 2000 and 2011, the government issued notices of the assessments described above, and made numerous demands for payment, to Sullivan.  (Doc. 9-2 at 2; Doc. 9-3 at 4; Doc. 9-4 at 8-9; Doc. 9-5 at 7-8; Doc. 9-6 at 6-7; Doc. 9-7 at 3.)  Payment was not forthcoming, and has not been made to this day.  (Doc. 9-2 at 2.)

---

[2]  Also during the hearing, Sullivan explained her failure to pay by reference to certain business difficulties and other financial hardship.

3

To resolve the dispute, Sullivan submitted two offers in compromise to the IRS. The first offer was processed on February 28, 2002 and rejected on November 3, 2003. (Doc. 9-2 at 3; Doc. 9-3 at 3.) The second offer was processed on August 3, 2006 and rejected on January 7, 2008. (Doc. 9-2 at 3; Doc. 9-3 at 3-4.)

On April 11, 2012, the government initiated this suit to reduce Sullivan's unpaid taxes and associated penalties to a money judgment. (Doc. 1.) Sullivan filed her Answer on June 15, 2012. (Doc. 4.) Both parties consented to direct assignment to the undersigned Magistrate Judge. (Doc. 2; Doc. 3.) After discovery commenced (Doc. 8), the government filed the instant Motion for Summary Judgment (Doc. 9).

## **Discussion**

It is apodictic that the government may commence an action in federal district court to collect unpaid federal taxes. *See* 26 U.S.C. §§ 7401, 7402(a); 28 U.S.C. § 1340; *see also United States v. Alfano*, 34 F. Supp. 2d 827, 836 (E.D.N.Y. 1999); *Beeler v. United States*, 894 F. Supp. 761, 771-72 (S.D.N.Y. 1995) ("The Court has jurisdiction over this [tax, and tax penalties, assessment, and collection] action pursuant to 28 U.S.C. §§ . . . 7401, and 7402."). The government may seek to recover not only delinquent tax obligations, but also statutory interest and penalties when the taxes are not timely paid.

Once the IRS makes an assessment against a taxpayer, and gives notice and demand for payment, the government obtains a lien in the amount of the deficiency against all property belonging to the taxpayer. Section 6321 of the Internal Revenue Code provides:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

4

26 U.S.C. § 6321.  The lien arises when the assessment is made, attaches automatically to every interest in property that the taxpayer had on the date of the assessment, and endures until the amount due is either satisfied or rendered unenforceable by lapse of time.  26 U.S.C. § 6322.  As described by the Supreme Court of the United States, the scope of the lien is broad, reaching "every interest in property that a taxpayer might have."  *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 720 (1985).

This lien, however, is not self-executing.  "Nevertheless, the IRS is not without a sword to wield when a taxpayer fails to honor his or her income tax obligations."  *United States v. Moskowitz, Passman & Edelman*, 603 F.3d 162, 165 (2d Cir. 2010).  The Internal Revenue Code arms the government with two tools for collection.  The first is the use of an administrative levy, which "is a provisional remedy and typically does not require any judicial intervention."  *Nat'l Bank of Commerce*, 472 U.S. at 720 (internal quotation omitted); *see* 26 U.S.C. § 6331(a).  Here, the government has opted to utilize the second enforcement mechanism—a lien-foreclosure suit, as contemplated by Section 7403(a) of the Internal Revenue Code.  That section authorizes the institution of a civil action in federal district court to enforce a lien "to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax."  26 U.S.C. § 7403(a).  In such proceedings, the court must "adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property."  26 U.S.C. § 7403(c).

In assessing the government's lien and the propriety of the lien-enforcement action, this Court recognizes that "an IRS notice of tax deficiency is presumed to be correct."  *United States v. Letscher*, 83 F. Supp. 2d 367, 372 (S.D.N.Y. 1999) (citing *Moretti v.*

5

*Comm'r of Internal Revenue*, 77 F.3d 637, 643 (2d Cir. 1996); *see generally* 14 Mertens Law of Fed. Income Tax'n § 50:51 (2013); *United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 242 (2002) ("It is well established in the tax law that an assessment is entitled to a legal presumption of correctness—a presumption that can help the Government prove its case against a taxpayer in court."). The forms submitted to this Court, IRS Form 4340 Certificate of Assessments, Payments, and Other Specified Matters (Doc. 9-3; Doc. 9-4; Doc. 9-5; Doc. 9-6; Doc. 9-7), constitute "presumptive proof of a valid assessment." *United States v. Lavi*, No. 02-CV-6299, 2004 WL 2482323, at *3 (E.D.N.Y. Sept. 23, 2004) (quoting *Geiselman v. United States*, 961 F.2d 1, 6 (1st Cir. 1992)); *see generally March v. I.R.S.*, 335 F.3d 1186 (10th Cir. 2003). "In general, courts will not look behind an assessment to evaluate the procedure and evidence used in making the assessment." *Ruth v. United States*, 823 F.2d 1091, 1094 (7th Cir. 1987). Not only are the assessments presumed valid, but "the IRS's tax calculations (including calculations of interest and penalties) are [also] presumptively valid and create a *prima facie* case of liability." *United States v. Chrein*, 368 F. Supp. 2d 278, 282 (S.D.N.Y. 2005).

As such, a taxpayer who wishes to challenge the validity of an assessment bears the burden of both production and persuasion to prove the claimed deficiency is incorrect by a preponderance of the evidence. *See Moretti*, 77 F.3d at 643; *Schaffer v. Comm'r of Internal Revenue*, 779 F.2d 849, 857-58 (2d Cir. 1985). "To defeat a motion for summary judgment, the taxpayer must not only show that the assessment is incorrect, but it must also prove the correct amount of the tax." *Chariot Plastics, Inc. v. United States*, 28 F. Supp. 2d 874, 882 (S.D.N.Y. 1998).

**I.     Timeliness**

As a preliminary matter, this Court must assess the timeliness of the government's collection action.[3] Section 6502(a)(1) of the Internal Revenue Code provides for a ten-year statute of limitations for collection of a tax that begins to run upon the date of the assessment of the tax:

> (a) Length of period. Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun—
>   (1) within 10 years after the assessment of the tax . . . .

26 U.S.C. § 6502(a)(1); *see CPS Elec., Ltd. v. United States*, 200 F. Supp. 2d 120, 123-24 (N.D.N.Y. 2002); *see also* 26 U.S.C. § 6601(g) (the interest on the underlying tax may be "assessed and collected at any time during the period within which the tax to which such interest relates may be collected"). "Statutes of limitation barring the collection of taxes must receive a strict construction in favor of the government." *Loewer Realty Co. v. Anderson*, 31 F.2d 268, 269 (2d Cir. 1929). In general, when an assessment is made, court proceedings to collect the tax and interest must be initiated within ten years after the assessment.[4]

---

[3] Of course, the period of limitations on collections is an affirmative defense, and the party raising it must specifically plead it and carry the burden of proof with respect to such a defense. *See* 15 Mertens Law of Fed. Income Tax'n § 57:84 (2013); *see also Madison Recycling Associates v. Comm'r of Internal Revenue*, 295 F.3d 280, 286 (2d Cir. 2002). Although Sullivan has not raised the statute of limitations in her submissions, I will address the issue *sua sponte* in consideration of her status as a *pro se* litigant. *See United States v. Alfano*, 34 F. Supp. 2d 827, 835-36 (E.D.N.Y. 1999) (addressing § 6502(a)(1) statute of limitations question *sua sponte*).

[4] The Internal Revenue Code also supplies a limitations provision applicable to assessments themselves, requiring that "the amount of any tax imposed . . . shall be assessed within 3 years after the return was filed." 26 U.S.C. § 6501(a). Here, each assessment was made well within the applicable three-year period. (Doc. 9-3 at 2; Doc. 9-4 at 2; Doc. 9-5 at 2; Doc. 9-6 at 2; Doc. 9-7 at 2.)

Certain circumstances, however, may extend or toll the statute of limitations. As relevant here, a taxpayer's submission of an offer-in-compromise tolls the continued running of the limitations period from the date the offer is pending until it is rejected, plus thirty days following the rejection. *See* 26 U.S.C. §§ 6331(i)(5), (k)(1)[5]; *see also United States v. Havner*, 101 F.2d 161, 163 (8th Cir. 1939) ("The taxpayer, in submitting such an offer and waiver, in effect requests the Government to withhold attempts to collect the tax while the offer is pending, and, in consideration of this forbearance on the part of the Government, consents to forego the benefit of having the statute of limitations run while his offer of settlement is pending."); 15 Mertens Law of Fed. Income Tax'n § 57:93 (2013) ("The offer in compromise is pending from the date it is accepted for processing.").

Here, Sullivan made two offers-in-compromise.[6] The first offer was processed on February 28, 2002 and rejected on November 3, 2003. (Doc. 9-2 at 3; Doc. 9-3 at 3.) In light of the additional thirty-day window, this offer tolled the statute of limitations from February 28, 2002 to December 3, 2003. The second offer was processed on August 3, 2006 and rejected on January 7, 2008. (Doc. 9-2 at 3; Doc. 9-3 at 3-4.) Again, the additional

---

[5] The government cites only 26 U.S.C. § 6331(i)(5), which provides that "[t]he period of limitations under section 6502 shall be suspended for the period during which the Secretary is prohibited under this subsection from making a levy." By the government's argument, because 26 U.S.C. § 6331(k)(1) does not permit the government to levy upon property while an offer-in-compromise is pending and (if rejected) for thirty days after the rejection, § 6331(i)(5) operates to toll the statute of limitations during this same period.

A separate statutory section, however, provides that the limitations period is tolled when the IRS is prohibited "from collecting by levy or a proceeding in court . . . and for 60 days thereafter." 26 U.S.C. § 6503(a)(1). Application of this section would toll the statute of limitations for an additional 120 days. Because the government's case is timely under either statute, and because the government has cited only the narrower window set forth in 26 U.S.C. § 6331(i)(5), the Court opts to use the tolling provision invoked by the government.

[6] In her Answer, Sullivan agreed with the government's description of her submission of the two offers-in-compromise. (Doc. 4.)

thirty-day window means that the statute was tolled from August 3, 2006 to February 7, 2008. In total, the ten-year statute of limitations was tolled 3 years, 3 months, and 9 days by the two offers-in-compromise.[7]

The earliest assessment at issue in this case was made on March 15, 1999. (Doc. 9-4 at 2.) The Complaint was filed on April 11, 2012 (Doc. 1), or 13 years, 27 days after the earliest assessment. Subtracting the 3 years, 3 months, and 9 days during which the collection period was suspended by the pendency of the offers-in-compromise, the Complaint was filed about two months before the limitations period expired.

Thus, the government's collection action is timely.

## II. Summary Judgment Standard

"A motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure may be employed in a lien foreclosure." 14 Mertens Law of Fed. Income Tax'n § 49E:55 (2013). Summary judgment is appropriate where there is no genuine issue of material fact in dispute and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant bears the burden of establishing the absence of a material factual dispute, and, in making this assessment, the Court views all facts and ambiguities in the record in the light most favorable to the non-movant. *See Gallo v. Prudential Residential Services, L.P.*, 22 F.3d 1219, 1223 (2d Cir. 1994).

---

[7] Just as the assessment itself is ascribed presumptive validity, the dates of the assessment and the dates of the offers-in-compromise found in the IRS 4340 forms are also presumed correct. *See United States v. Red Stripe, Inc.*, 792 F. Supp. 1338, 1341 (E.D.N.Y. 1992). Sullivan thus bears the burden to demonstrate by a preponderance of the evidence that the dates are wrong. She has submitted no evidence that would call them into question.

9

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Konikoff v. Prudential Ins. Co. of America*, 234 F.3d 92, 97 (2d Cir. 2000) (quoting *Anderson*, 477 U.S. at 248).

> Where, as here, the nonmovant bears the burden of proof at trial, the movant may show prima facie entitlement to summary judgment in one of two ways: (1) the movant may point to evidence that negates its opponent's claims or (2) the movant may identify those portions of its opponent's evidence that demonstrate the absence of a genuine issue of material fact, a tactic that requires identifying evidentiary insufficiency and not simply denying the opponent's pleadings.

*Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006) (citing *Celotex Corp.*, 477 U.S. at 323). If the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, then summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 323. Summary judgment is only proper when reasonable minds could not differ as to the import of the evidence. *See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991). Used properly, Rule 56 provides a "vital procedural tool to avoid wasteful trials," *Capital Imaging Assocs. v. Mohawk Valley Medical Assocs.*, 996 F.2d 537, 542 (2d Cir. 1993), and "to isolate and dispose of factually unsupported claims," *Celotex Corp.*, 477 U.S. at 323.

The government's Motion for Summary Judgment is unopposed. According to the Second Circuit, even where the non-moving party "chooses the perilous path of failing to

submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001). If the movant cannot meet its burden as described above, "summary judgment must be denied even if no opposing evidentiary matter is presented." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970) (internal quotation omitted); *see Giannullo v. New York*, 322 F.3d 139, 141 (2d Cir. 2003) ("the non-movant is not required to rebut an insufficient showing"). Additionally, in determining whether the movant has satisfied its burden of showing the absence of a genuine issue for trial, "the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement." *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). Rather, the district court "must be satisfied that the citation to evidence in the record supports the assertion." *Id*.

When deciding a motion for summary judgment, this Court must "view the evidence in a light most favorable to the non-moving party and draw all reasonable inferences in its favor." *American Casualty Co. of Reading, PA v. Nordic Leasing, Inc.*, 42 F.3d 725, 728 (2d Cir. 1994). The Court recognizes that *pro se* litigants, such as Sullivan, "are to be given special latitude on summary judgment motions." *Salahuddin v. Coughlin*, 999 F. Supp. 526, 535 (S.D.N.Y. 1998). Sullivan's *pro se* status thus imports an added obligation to read her pleadings and submissions "liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999). However, a *pro se* party's "bald assertion," without evidentiary support, cannot overcome a properly-supported motion for summary judgment. *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). Instead,

11

to defeat the Motion the non-moving *pro se* party must provide the Court with some basis to believe that her "version of relevant events is not fanciful." *Christian Dior-New York, Inc. v. Koret, Inc.*, 792 F.2d 34, 38 (2d Cir. 1986). In other words, *pro se* status does not relieve Sullivan from the usual requirements of summary judgment. *See Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995).[8]

With these standards in mind, the Court now turns to the merits of the government's Motion.

## III. The Merits of the Government's Summary Judgment Motion

As stated, the government's tax assessments and calculations are entitled to a presumption of correctness, and the taxpayer bears the burden to disprove the accuracy of the claimed delinquency. Where, as here, the assessment records are accompanied by a Certificate of Official Record, the records are self-authenticating and may be relied upon in ruling on the government's motion for summary judgment. *See Brewer v. United States*, 764 F. Supp. 309, 318 (S.D.N.Y. 1991); Fed. R. Evid. 803(8) (public records hearsay exception); Fed. R. Evid. 902(1) (domestic public documents under seal and signature are self-authenticating).

The government has submitted IRS Form 4340 for the years 1996 to 1999, and 2010. The forms show assessments, interest, and penalties in the amount of $237,086.36. This amount is presumed correct.

---

[8] Additionally, in light of the inexperience of *pro se* parties—particularly their likely unawareness "of the consequences of [their] failure to offer evidence bearing on triable issues," *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 767 (2d Cir. 1983)—a district court may only grant a summary judgment motion against a *pro se* party if the litigant has received notice that failure to respond to the motion will trigger a default and possibly result in judgment against her. *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996); *see also* Local Rule 56(e). Here, the government properly affixed a copy of the requisite "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" to its summary judgment motion (Doc. 9-1), and served Sullivan with the notice (Doc. 9 at 2).

But the government does not seek to reduce this sum to judgment. Instead, the government proffers the Declaration of Rai Shepardson, an IRS Technical Services Advisor, in which Shepardson states that statutory additions, penalties, and interest have accrued since the assessments resulting in an aggregate liability of $417,757.97 as of September 21, 2012. Such calculations of IRS officials, like the forms underlying them, are also "presumptively valid and create a prima facie case of liability."[9] *United States v. Sweeny*, 418 F. Supp. 2d 492, 496 (S.D.N.Y. 2006) (quoting *United States v. Chrein*, 68 F. Supp. 2d 278, 282 (S.D.N.Y. 2005)); *see United States v. Chesir*, No. 08-CV-2552, 2011 WL 3040536, at *3 (E.D.N.Y. June 27, 2011), adopted in full, 2011 WL 3104392 (E.D.N.Y. July 25, 2011) (relying upon similar affidavit of IRS Technical Services Advisor as to taxpayer's liability in reducing unpaid amounts to judgment); *see also United States v. Washington*, No. 10 Civ. 2149, 2010 WL 2654010, at *1-2 (E.D.N.Y. June 25, 2010) (same). That being the case, Shepardson's calculation of Sullivan's full tax, interest, and penalty liability is treated as correct unless Sullivan is able to overcome this presumption of validity.

Defendant Sullivan has made no effort to challenge any of the assessments against her or Shepardson's calculation of the statutory additions and interest. *See Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."). In fact, as previously noted, Sullivan does not dispute the accuracy of the income tax assessments. Because there are no material facts in dispute, this Court will grant summary judgment and enter judgment in favor of the United States of America against

---

[9] The Court notes that, in reaching her calculation, Shepardson "reviewed records maintained by the IRS in the ordinary course of business as they relate to the assessments made against taxpayer Jane C. Sullivan" and her calculations were "based on [her] review of those records." (Doc. 9-2 at 1.)

13

Defendant Jane C. Sullivan in the amount of $417,757.97, plus statutory additions and interest accruing from and after September 21, 2012, pursuant to 26 U.S.C. §§ 6601, 6621(a)(2), 6622, and 28 U.S.C. § 1961(c).

## Conclusion

For these reasons, the Court GRANTS the government's Motion for Summary Judgment (Doc. 9). It is hereby ORDERED that judgment is entered in favor of the United States of America against Jane C. Sullivan for unpaid federal income taxes, penalties, and interest for the taxable years 1996 through 1999 and 2010, in the amount of $417,757.97, plus statutory additions and interest accruing from and after September 21, 2012, pursuant to 26 U.S.C. §§ 6601, 6621(a)(2), 6622, and 28 U.S.C. § 1961(c).

Dated at Burlington, in the District of Vermont, this 27th day of February, 2013.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge